MARY L. SHUPE, Appellant, v. JOSEPH E. MARTIN, Administrator of JOHN P. MARTIN.—12 S. W. (2d) 450.

Division One, December 31, 1928.

*Christian F. Schneider* for appellant.

*James P. Maginn* for respondent.

GANTT, J.—Suit for damages. The amended petition is as follows:
"Plaintiff, for her amended petition herein, leave of court to file same having been first duly had and obtained, and for her cause of action against the defendant herein states:

"That defendant, Joseph E. Martin, is the administrator of the estate of John P. Martin, deceased, also known as 'Jack Martin' hereinafter mentioned and referred to, and in charge of said es-

tate of said John P. Martin, deceased, who came to his death and committed suicide at the home of plaintiff in the city of St. Louis, Missouri, on or about February 6, 1924, by hanging himself by means of a rope from the water pipes in the basement of the home of plaintiff and her family at No. 5082 Cabanne Avenue, St. Louis, Missouri, on and during the night of February 6, 1924.

"Plaintiff further states that said John P. Martin on or about the —— day of December, A. D. 1923, engaged and bargained with the plaintiff herein for room, board and lodging at her said home, and by such contract and agreement for room, board and lodging agreed and bound himself, and by reason of such relationship he was obliged and bound himself to conduct himself in and about said premises in a reasonably and orderly manner and so as not to interfere with the well-being, peace and quiet of plaintiff and her family and so as not to injure the health of plaintiff and her family; that the said John P. Martin did conduct himself in and about said premises in a reasonable and orderly manner from said date until on or about the said sixth day of February, A. D. 1924, but during the night of February 6, 1924, said John P. Martin, without notice or warning to anyone, and without plaintiff having knowledge thereof, went into the basement or cellar at plaintiff's said home and where he had no lawful right to be and became a trespasser, and hung and strangled himself by means of a rope from the water pipe in said cellar or basement, and when plaintiff descended and went into said cellar or basement of her said home early next morning, and while it was still dark there, she suddenly ran against the body of said John P. Martin then and there hanging, stiff and dead, and thereby the plaintiff suffered a severe nervous shock. That by reason thereof plaintiff's health became and ever since has been deranged and impaired and has caused her to become ill and sick and her peace and quiet permanently disturbed; that in trying to cure said illness and nervous condition she has been compelled to expend large sums of money, having heretofore employed three different doctors or physicians to attend and wait on her by reason of such injuries and illness, in attempting to cure the same; that she required nursing and care and was unable to perform her household duties ever since; that her said illness is permanent; that by reason of the premises she will continue to suffer loss of earning and be compelled to expend large sums of money for medicines and medical attention; that she has suffered and will continue to suffer great pain of mind and body, all to her damage in the sum of ten thousand dollars, for which said sum she prays compensatory damages against the estate of said John P. Martin.

"Plaintiff further states that said act of said John P. Martin in committing suicide as aforesaid was voluntary and intentional on the part of said John P. Martin; that he knew or by the exercise of ordinary care would have known that by such act he would disturb and disrupt the peace and quiet of the home of plaintiff and would or might injure her health as hereinabove stated; that he had attempted to commit suicide before he came to the home of plaintiff and her family, but concealed that fact from the plaintiff at the time he engaged said room, board and lodging, and plaintiff had no notice or knowledge thereof; that the said John P. Martin at the time of his death was possessed of a large estate worth more than $50,000, in personal and real estate.

"Wherefore, she prays judgment against defendant as such administrator of the estate of said John P. Martin in the further sum of ten thousand dollars for exemplary or punitive damages, in all in the sum of twenty thousand dollars, and costs of this suit."

Defendant demurred to the amended petition on the following ground:

"Because the cause of action, if any there be, arising out of facts stated in said petition is an action in tort, and, as such, abated on the death of said John P. Martin, the alleged tortfeasor, and did not survive against his administrator."

The demurrer was sustained, and, plaintiff declining to plead further, judgment was for defendant. Plaintiff appealed.

The relationship of the parties, the duty of the deceased, John P. Martin, growing out of the relationship, and his failure to perform said duty are pleaded.

Plaintiff states a cause of action, if any, in tort. We do not understand her to contend otherwise, for, in her argument, the deceased is referred to as a "tortfeasor," and she cites the following statute as authorizing the suit:

"Causes of action upon which suit has been or may hereafter be brought by the injured party for personal injuries, other than those resulting in death, whether such injuries be to the health or person of the injured party, shall not abate by reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued; but in case of the death of either or both such parties, such cause of action shall survive to the personal representative of such injured party; and against the person, receiver or corporation liable for such injuries and his legal representatives, and the liability and the measure of damages shall be the same as if such death or deaths had not occurred." [Sec. 4231, R. S. 1919; Sec. 5438, R. S. 1909.]

This section does not authorize the suit, for it only applies to suits actually filed and pending at the time of the death of either

the wronged or wrongdoer. We construed the section in City of Springfield v. Clement, 296 Mo. 150, 246 S. W. 175, where we said:

"Prior to the enactment of Section 5438, Revised Statutes 1909 (now Sec. 4231, R. S. 1919), there was no doubt but what the death of a tortfeasor wiped out and destroyed a cause founded upon a tort, committed by him prior to his death. This seems to have been the universal rule. [Bates v. Sylvester, 205 Mo. 493; Millar v. Transit Co., 216 Mo. 99.]

"And in our opinion said Section 5438, Revised Statutes 1909, the same as Section 4231, Revised Statutes 1919, has no application to this case, for the reason that this section of the statute by its express terms applies only to actions pending at the time of the death of the deceased, and this record discloses that the Abbott suit was not filed until August 25, 1916, and Otis L. Milligan, the tortfeasor, died March, 1913, some three years before that suit was brought. The same views as here expressed were held to be the law in Showen v. Street Ry. Co., 164 Mo. App. l. c. 47, 148 S. W. 125. And this court in the case of Downs v. United Rys. (Mo. Sup.), 184 S. W. 995, cited upon this point with approval the case of Showen v. Ry. Co., supra.

"From the views thus expressed we may take it for granted that said Section 5438 does not assist plaintiff in this case."

To the same effect: Bates v. Sylvester, 205 Mo. 493, 104 S. W. 73; Gilkeson v. Railroad, 222 Mo. 173, 121 S. W. 138; Millar v. Transit Co., 216 Mo. 99, 115 S. W. 521.

It follows the court ruled correctly in sustaining the demurrer, and the judgment is affirmed. All concur.